UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                        :

BRADLEY HART,                 :
                       :
                  Plaintiff,  :

-v-               :

CITY OF NEW YORK, CAPITAL ELIAS  :
NIKAS and OFFICER JORGE GONZALEZ,  :
                       :
                  Defendants.  :
                       :
-----------------------------------------------------------X

No. 11 Civ. 4678 (RA)

SECOND AMENDED
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Bradley Hart brings this action pursuant to 42 U.S.C. § 1983 against Defendants

City of New York, Captain Elias Nikas and Officer Jorge Gonzalez asserting claims of false

arrest, false imprisonment, malicious prosecution and deliberate indifference to medical needs in

violation of the Eighth Amendment.  Before the Court are Defendants' motion for summary

judgment and Hart's second motion for leave to amend his complaint.  For the following reasons,

Defendants' motion for summary judgment is granted in part and denied in part, and Hart's

motion for leave to amend his complaint and for equitable relief is denied.

## I.      Background

### A.      Factual Background[1]

      At all times relevant to this action, Hart resided at 47 Bruckner Boulevard, Bronx, New

York.  On April 17, 2009 at 12:52 a.m., Hart's neighbor, Paul Johnson, filed a complaint with the

---

[1]      The following facts are drawn from Defendants' Rule 56.1 statement ("Defs. 56.1"), Hart's opposition thereto, and the exhibits incorporated therein.  Where one party's Rule 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute the fact, or merely objects to inferences drawn from the fact.  To the extent Hart failed to respond to facts set forth in Defendants' Rule 56.1 statement, such facts are deemed admitted.  See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).

New York City Police Department alleging that Hart called Johnson during the evening of April 16, 2009, and stated:

> I'm giving you a courtesy call to let you know I'll be banging with the hammer for another 20 minutes and it's in your best interest not to call 311.  I'll have you thrown out of the neighborhood.

(Defs. Exs. B & G.)  This was not the first dispute between the neighbors.  (See Defs. Ex. N (Captain Elias Nikas Dep.) at 9:21-10:10 (recalling a prior incident at Hart's apartment); Defs. Ex. L (Bradley Hart Dep.) at 47:13-50:3 (describing prior instances when Captain Nikas, along with other officers, came to his house based on a complaint from Johnson).)  The complaint was recorded at the 40th precinct by "PAA Jegede," whom Hart alleges is a civilian employee of the NYPD.  (Defs. Ex. B at 3; Pl. Opp'n 4-5.)  Sergeant Lynch was the approving supervisor and Sergeant Smalls was the signoff supervisor.  (Defs. Ex. B at 3.) The complaint states that Hart had "threatened to have [Johnson] thrown out of his [apartment]."  (Id. at 1.)  Hart's alleged conduct is classified in the complaint as "aggravated harassment."  (Id.)

On the morning of April 17, 2009, non-defendant Sergeant Timothy Brown was directed by his precinct to go to Hart's home pursuant to a "61 assignment" to investigate what was going on at the address.  (Defs. Ex. O (Sergeant Timothy Brown Dep.) at 16:8-11.)  He could not recall whether he learned of the open complaint against Hart prior to his arrival or while he was at the scene.  (Id. at 18:6-8.)  Upon arrival, Sergeant Brown spoke with Hart to inquire about "who he was and what was going on."  (Id. at 16:22-17:1.)  Officer Gonzalez, responding to a dispatcher call, met Supervisor Brown on the sidewalk outside of Hart's apartment, and was told by Sergeant Brown that he had to "[e]ffect an arrest at a residence."  (Defs. Ex. M (Officer Jorge Gonzalez Dep.) at 19:10-12, 19:18-20.)  Officer Gonzalez had never been to Hart's home or had prior contact with him before this date, (id. at 20:6-11), although Captain Nikas—who was not

present at Hart's home on April 17th—had been to the Bruckner address sometime earlier in 2009 to respond to a complaint, (Nikas Dep. 9:21-10:10).

Officer Gonzalez, along with Sergeant Brown and another officer at the scene, entered Hart's apartment and advised him that he was being arrested. (Gonzalez Dep. 27:5-7.) In response to Sergeant Brown's question, "Did you call [Johnson]," Hart replied, "Yeah. Yeah. I did call him." (Defs. Ex. F at 5; Defs. Ex. H at 1; Defs. Ex. L (Bradley Hart Dep.) at 67:22-69:8 (admitting to calling him and describing the call).) Officer Gonzalez also recalled that Hart "looked a little confused about why [they] had to arrest him" but stated that he had a "problem with another tenant." (Gonzalez Dep. 28:2-7.)

According to both Sergeant Brown and Officer Gonzalez, because a criminal complaint had been filed against Hart and because Hart was present at the scene, they were required to arrest him. (Brown Dep. 25:5-7, 25:21-22; Gonzalez Dep. 30:2-9 ("[W]e had the opened case, Mr. Hart was there and we had to affect the arrest for opened complaint.").) Thus, once Sergeant Brown confirmed that Hart was who they believed him to be, he had no discretion in directing Officer Gonzalez not to arrest him. (Brown Dep. 21:3-6, 25:21-24, 32:20-23 ("If there's a complaint that says you have to arrest someone, then you have to arrest someone."); Nikas Dep. 27:9-24 (explaining that Sergeant Brown did not "really have a choice" to arrest Hart because there was an open misdemeanor complaint and Hart was present at the scene).)

Hart was arrested by Officer Gonzalez at 9:47 a.m. and charged with aggravated harassment in the second degree, a class A misdemeanor, in violation of N.Y. Penal Law § 240.30.[2] (Defs. Exs. C & E.) Officer Gonzalez then transported Hart to the 40th Precinct,

---

[2]        Under New York law, "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he . . . communicates with a person, anonymously or otherwise, by telephone . . . in a manner likely to cause annoyance or alarm; or . . . [m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication." N.Y. Penal Law § 240.30.

where he remained for approximately 12 hours until he was transferred to Bronx County Central

Booking at or around 10:03 p.m.  (Gonzalez Dep. 55:8-10; Defs. Ex. E.)  According to Officer

Gonzalez, he escorted Hart to the bathroom at least three times while he was in custody,

(Gonzalez Dep. 61:11-13), although Hart asserts that he was only permitted to use the bathroom

upon arrival and at 8:00 p.m. in the evening, (Hart Dep. 60:14-17, 60:24-25).  According to Hart,

he had informed the officers that he had a "frequent urination issue due to [his] MS" but that he

was not permitted to use the bathroom as needed.  (Id. at 60:15-24.)  Hart testified that, as a

result, he urinated on himself while in detention.  (Id. at 61:1.)  Officer Gonzalez recalled that

Hart was "complaining that he did suffer from something," but was not aware that he had

urinated on himself.  (Gonzalez Dep. 63:11-16; see also Nikas Dep. 28:15-18 (learning for the

first time at his deposition that Hart had alleged that he was not allowed to use the bathroom as

needed and urinated on himself).)

Hart was arraigned on April 18, 2009 at the Bronx Criminal Court, at which time an

Order of Protection was issued in favor of Johnson.  (Defs. Exs. E & H.)  Between arrest and

arraignment, Hart was in police custody for 24 hours and 27 minutes.  (Defs. 56.1 ¶ 12; Defs. Ex.

E.)  Hart subsequently appeared in court on June 2, 2009 and October 21, 2009, during which the

prosecution sought adjournments because they were unable to locate or speak to Johnson.  (Defs.

56.1 ¶ 14.)  On December 10, 2009, the criminal charges against Hart were dismissed and sealed

upon motion by the prosecution because "without the cooperation of the complaining witness,

the People [would] be unable to meet their burden of proof at trial."  (Defs. 56.1 ¶ 15; Defs. Ex.

K.)

**B.** **Procedural History**

On July 7, 2011, Hart commenced this action pursuant to 42 U.S.C. § 1983 against the

City of New York, Captain Nikas and Officer Gonzalez asserting claims of false arrest, false imprisonment, malicious prosecution and deliberate indifference to medical needs in violation of the Eighth Amendment.  On November 20, 2012, the Court denied Hart's request to amend his complaint to add individual defendants Lieutenant Brown and Sergeants Lynch and Smalls, but granted his request to amend his complaint to add a <u>Monell</u> claim.  (Dkt. No. 27.)  The Court further ordered that discovery related to Hart's <u>Monell</u> claim against the City of New York is stayed until a motion for summary judgment against Captain Nikas and Officer Gonzalez is decided.  Presently before the Court are Defendants' motion for summary judgment and Hart's second motion for leave to amend his complaint and for equitable relief.  For the following reasons, Defendants' motion is granted in part and denied in part, and Hart's motion is denied.

## II.    Defendants' Motion for Summary Judgment

### A.    Standard of Review

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that it is entitled to summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  In reviewing the record, the Court must assess the evidence in "the light most favorable to the [non-moving party]" and resolve all ambiguities and draw all inferences in its favor.  <u>See</u> <u>Tufariello v. Long Island R.R. Co.</u>, 458 F.3d 80, 85 (2d Cir. 2006).  A party opposing summary judgment must put forth more than a "scintilla of evidence."  <u>Anderson</u>, 477 U.S. at 252.  It "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements."  <u>See</u> <u>Gottlieb v. Cnty. of Orange</u>, 84 F.3d 511, 518 (2d Cir. 1996).  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 248.  In

determining whether disputed issues of fact exist, the court is not to weigh the evidence and determine the truth of the matter or make credibility determinations, but rather must determine whether there is a genuine issue for trial.  Id. at 253-54.

### B.    Defendants' Motion for Summary Judgment

#### 1.    False Arrest and False Imprisonment Claims

Defendants move for summary judgment on Hart's false arrest and false imprisonment claims on the ground that Defendants had probable cause to arrest him.  In response, Hart contends that Defendants did not have probable cause to arrest him because they failed to "make further inquiry" into the circumstances of Hart and Johnson's relationship despite the fact that officers in the precinct had knowledge of the nature of their relationship.

A § 1983 claim for false arrest is "substantially the same" as a claim for false arrest under state law.  See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  Moreover, under New York law, the torts of false arrest and false imprisonment are "synonymous."  See Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  To prevail on either claim, a plaintiff must establish that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003).

"[T]he existence of probable cause is an absolute defense to a false arrest claim."  Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).  "Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3 625, 634 (2d Cir. 2000)).  "When determining whether probable cause exists[,] courts must consider those

facts available to the officer at the time of the arrest and immediately before it." <u>Panetta</u>, 460 F.3d at 395 (internal quotation marks and emphasis omitted). "[T]he probable cause inquiry is objective rather than subjective." <u>Jaegly</u>, 439 F.3d at 154 (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152-53 (2004)). "When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'" <u>Panetta</u>, 460 F.3d at 395 (quoting <u>Martinez</u>, 202 F.3d at 634). Moreover, "[i]t is well established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." <u>Id.</u> (internal quotation marks and citations omitted). Finally, "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." <u>Id.</u> "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." <u>Id.</u> at 396.

Officer Gonzalez had probable cause to arrest Hart for aggravated harassment on April 17, 2009. Johnson, the alleged victim, filed a complaint against Hart asserting that Hart told him that he would have Johnson "thrown out of the neighborhood" if he called the police to complain about the banging in Hart's apartment. A complaint from the putative victim is generally sufficient to establish probable cause. <u>Id.</u> at 395. Moreover, the information communicated by Johnson supported a finding of probable cause to arrest Hart for aggravated harassment in the second degree, which requires a showing that "with intent to harass, annoy, threaten or alarm another person," the individual communicates with the victim by telephone "in a manner likely to cause annoyance or alarm." <u>See</u> N.Y. Penal Law § 240.30; <u>Riccio v. New York</u>, 859 F. Supp. 2d 480, 485 (E.D.N.Y. 2012). The complaint, which was allegedly recorded by a civilian employee of the police department, was approved by Sergeants Lynch and Smalls and

subsequently relayed to Sergeant Brown, who was sent to Hart's home by assignment from the precinct.  Sergeant Brown and Officer Gonzalez, who ultimately effectuated the arrest, were permitted to rely on information conveyed by the other police officers at the precinct in determining that there was probable cause to arrest Hart.  See Panetta, 460 F.3d at 395.

Hart raises several arguments against a finding of probable cause, each of which the Court rejects.  First, Hart contends that Captain Nikas was aware of a prior dispute between Hart and Johnson and that such knowledge should have been "imputed to his precinct."  (James Greenberg Aff., Feb. 22, 2013, ¶ 16.)  With this knowledge, Hart argues, Sergeant Brown and Officer Gonzalez should have been alerted to inquiring further into the circumstances of the complaint before arresting him.  Nikas's testimony indicates that he had been to Hart's apartment on one occasion in 2009 in response to a "a dispute with somebody in the building." (Nikas Dep. 9:24-2; Hart Dep. 47:13-50:3 (describing prior instances when Captain Nikas, along with other officers, came to his house based on a complaint from Johnson).)  While Nikas might have previously gone to Hart's apartment in response to a separate dispute between Hart and Johnson, this knowledge is not imputed to the rest of the precinct.

"The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'"  Savino, 331 F.3d at 74 (quoting Illinois v. Andreas, 463 U.S. 765, 777 n.5 (1983)).  This doctrine has been applied only "to assist officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge."  Id.  Indeed, the Second Circuit has held that the doctrine "cannot be used to impute to an officer 'facts known to some [other] members of the police force which exonerate an arrestee.'"  Id. (quoting

United States v. Valez, 796 F.3d 24, 28 (2d Cir. 1986)).

Although Captain Nikas might have been involved in a prior dispute between Hart and Johnson, there is no evidence in the record that he was involved in or assisting with the April 17th investigation into a dispute between the neighbors.  Because he was not assisting in this investigation, the collective knowledge doctrine does not apply.  Moreover, even assuming he was involved in some manner, the Second Circuit has made clear that "one cannot establish that an officer engaged in conduct undertaken in bad faith[] simply by presenting evidence of another officer's knowledge or state of mind."  Id. (internal quotation marks omitted).  Officer Gonzalez's decision to arrest Hart was not unreasonable or taken in bad faith merely because another member of the precinct had knowledge—from a prior investigation—that might cast doubt on the probable cause that existed at the time of the arrest.

Hart similarly contends that Officer Gonzalez himself had knowledge of the prior relationship between Hart and Johnson and therefore was required to inquire further into the circumstances of the complaint before arresting Hart.  There is a dispute in the record as to whether Officer Gonzalez did in fact have knowledge of the neighbors' prior conflict.  Hart testified that he had recognized the officers who arrived at his apartment on April 17th "because they had been there before," (Pl. Ex. 7 (Bradley Hart Dep.) at 54:9-11), while Officer Gonzalez testified that he had never been to the apartment before or had contact with Hart or Johnson prior to that day, (Gonzalez Dep. 20:6-15).  In any event, assuming that Officer Gonzalez had been to the apartment or known Hart or Johnson prior to that day, that would not vitiate probable cause. It is true that where a "bitter prior relationship exists" that is "known to the arresting officer before the arrest is made, a complaint from the complaining victim alone may not be enough to constitute probable cause; the officer may need to investigate further."  See Sankar v. City of

9

N.Y., 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (quoting Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)).  Here, however, the officers did just that.  Upon arriving at Hart's apartment, Sergeant Brown confirmed that the individual inside was in fact Hart and asked him, "Did you call [Paul Johnson]?" to which Hart responded, "Yeah.  Yeah.  I did call him."  The officers' further inquiry and corroboration of the facts are sufficient to dispel concerns about Johnson's veracity.  See Brodie v. Fuhrman, No. 07 Civ. 4212 (DGT), 2010 WL 1189347, at *6 (E.D.N.Y. Mar. 29, 2010).  Moreover, the fact that Sergeant Brown, and not Officer Gonzalez, was the one to inquire further into the nature of the allegations does not affect the probable cause determination.  As noted above, pursuant to the collective knowledge doctrine, "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all."  Savino, 331 F.3d at 74.[3]

Finally, once probable cause was established, Officer Gonzalez was not required to investigate further.  Probable cause is determined at the time of arrest.  "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically possible claim of innocence before making an arrest.  See Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).  Thus, although Hart stated to the officers at the time of the arrest that he had a "problem with another tenant" but "didn't believe he did anything" that would lead to his arrest, (Hart. Dep. 28:6-20), the officers had a reasonable basis for believing that probable cause existed and were not required to investigate the possible claims of innocence before arresting him.  See Jaegly, 439 F.3d at 153 (finding that police officer had

---

[3]       Hart also contends that the officers testified inconsistently regarding whether they had any discretion in deciding whether to arrest him or whether it was "automatic" in light of the open complaint pending against him. (Greenberg Aff. ¶¶ 19-21.)  The Court does not read this testimony as inconsistent.  Rather, the officers consistently testified that when there is an open complaint pending against an individual, they are required to arrest him upon verifying that the individual to be arrested was present.  (Brown Dep. 25:5-7; Gonzalez Dep. 29:19-24.)  To the extent the officers engaged in a preliminary investigation at the scene, this only further supported their verification of the complaint and a finding of probable cause.  (Brown Dep. 16:22-17:3; Gonzalez Dep. 30:2-9.)

probable cause to arrest plaintiff for second degree harassment despite plaintiff's claim that he

had a "valid explanation for his actions"). Accordingly, because Officer Gonzalez had probable

cause to arrest Hart, Defendants are entitled to summary judgment on Hart's false arrest and false

imprisonment claims.

### 2. Malicious Prosecution

Defendants also move for summary judgment on Hart's malicious prosecution claim.

Under New York law, "the elements of an action for malicious prosecution are (1) the initiation

of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4)

malice." Savino, 331 F.3d at 72 (quoting Colon v. City of N.Y., 60 N.Y.2d 78, 82 (1983)). The

plaintiff bears the burden of showing all four elements of this claim. Rothstein v. Carriere, 373

F.3d 275, 282 (2d Cir. 2004). Because Defendants had probable cause to arrest Hart, his

malicious prosecution claim fails.

"[T]he existence of probable cause is a complete defense to a claim of malicious

prosecution in New York." Savino, 331 F.3d at 72. "Once probable cause to arrest has been

established, claims of malicious prosecution survive only if, between the arrest and the initiation

of the prosecution, 'the groundless nature of the charges [is] made apparent by the discovery of

some intervening fact.'" Smith v. Tobon, No. 12-3917-cv, 2013 WL 3368885, at *1 (2d Cir.

July 8, 2013) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996)). As

the Court has concluded, Defendants had probable cause to arrest Hart at the time of arrest. The

only evidence Hart submits to cast doubt on the existence of probable cause to prosecute is his

testimony that Captain Nikas asked him, "Why are you here?" upon seeing him at the precinct.

(Hart Dep. 55:24-56:2.) This evidence, however, does not establish that Defendants learned of

any intervening facts between the arrest and the initiation of criminal proceedings that could

eliminate probable cause.  See Thomas v. City of N.Y., No. 11 Civ. 2219 (LAP)(GWG), 2013
WL 1325186, at *9 (S.D.N.Y. Apr. 2, 2013) (finding that plaintiff's subsequent conversation
with police officers after being arrested, during which he did not provide any additional facts, did
not eliminate probable cause).  Accordingly, Officer Gonzalez's probable cause to arrest Hart is
a "complete defense" to the malicious prosecution claim and summary judgment is granted in
favor of Defendants.[4]  See Smith v. City of N.Y., 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005).

### 3.    Qualified Immunity

Alternatively, Defendants assert that Officer Gonzalez is entitled to summary judgment
on Hart's false arrest and malicious prosecution claims on the basis of qualified immunity.
Police officers are entitled to qualified immunity if "(1) their conduct does not violate clearly
established constitutional rights, or (2) it was objectively reasonable for them to believe their acts
did not violate those rights."  Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996).  In the false
arrest context, "[a]n arresting officer is entitled to qualified immunity . . . 'if he can establish that
there was arguable probable cause to arrest.'"  Ackerson v. City of White Plains, 702 F.3d 15, 21
(2d Cir. 2012) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).  "Arguable
probable cause exists if either (a) it was objectively reasonable for the officer to believe that
probable cause existed, or (b) officers of reasonable competence could disagree on whether the
probable cause test was met."  Id. (quoting Escalera, 361 F.3d at 743).  Only "[i]f officers of

---

[4]       Although the Court need not reach the remaining elements of the malicious prosecution claim, it notes that
Hart has failed to submit any evidence that Defendants initiated the prosecution or acted with malice.  "Where the
defendant in a malicious prosecution action is a police officer, 'courts have found a triable issue of fact as to the
initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out
complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and
forwarded it to prosecutors."  Alcantara v. City of N.Y., 646 F. Supp. 2d 449, 457-58 (S.D.N.Y. 2009) (quoting
Espada v. Schneider, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007)).  Hart has failed to submit any evidence
demonstrating that either Captain Nikas or Officer Gonzalez took such action.  Officer Gonzalez testified that he
went to court to speak with the prosecutor responsible for Hart's case, (Gonzalez Dep. 62:21-22), but that fact alone
is insufficient to satisfy the initiation element.  Moreover, there is no evidence in the record that the prosecution was
"undertaken from improper or wrongful motives, or in reckless disregard" of Hart's rights.  See Manganiello v. City
of N.Y., 612 F.3d 149, 163 (2d Cir. 2010) (quoting Pinksy v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996)).

reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause" is an officer not immunized from liability. Id.  Here, even assuming Officer Gonzalez did not have probable cause to arrest Hart, his conduct in arresting him was objectively reasonable.  Based on the complaint provided by Johnson—in which he states that Hart called him and stated, "it's in your best interest not to call 311[;] I'll have you thrown out of the neighborhood"—and the officers' preliminary investigation of the incident—during which Hart confirmed that he called Johnson—Officer Gonzalez had at least arguable probable cause to believe that Hart should be arrested for aggravated harassment.  Because Officer Gonzalez had arguable probable cause to arrest Hart, he is entitled to qualified immunity on Hart's false arrest and malicious prosecution claims.  See Thomas, 2013 WL 1325186, at *8, 10 (finding that defendant was entitled to qualified immunity on false arrest and malicious prosecution claims because defendant had arguable probable cause).

### 4.    Eighth Amendment Claim

Hart also claims that his Eighth Amendment rights were violated by Defendants' repeated refusal to permit him to use the bathroom for "a period of approximately 12 hours, demonstrating deliberate indifference to [his] needs" in light of his having informed Officer Gonzalez that he had multiple sclerosis, a side effect of which is frequent urination.  (Compl. ¶ 18-19.)  As a result, he claims that he "repeatedly soiled himself and remained imprisoned in urine-soaked clothing" and that he thus "suffered physical discomfort, emotional and psychological distress, embarrassment, humiliation, and was otherwise injured and damaged."   (Id. ¶¶ 20-21.) Defendants move for summary judgment on this claim as well.

While a convicted prisoner may bring a § 1983 claim under the Eighth Amendment, a

pretrial detainee's claim is governed by the Due Process Clause of the Fourteenth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The standard is the same under both amendments, containing an objective and subjective component. Id. at 70-71. For this claim—which is properly construed as a conditions of confinement claim[5]—to rise to the level of a constitutional violation, there must exist evidence that: "1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and 2) subjectively, the defendant acted with a 'sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (alteration in original).

To meet the objective test, there must be a deprivation of the inmate's "'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." Id. (quoting Jabbar v. Fischer, 683 F.3d 54, 57 (2nd Cir. 2012) (alteration in original). "[R]easonably adequate sanitation and the ability to eliminate and dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner." Odom v. Keane, No. 95 Civ. 9941 (SS), 1997 WL 576088, at *5 (S.D.N.Y. Sept. 15, 1997) (quoting Whitnack v. Douglas County, 16 F.3d 954, 958 (5th Cir. 1994) (alteration in original).

To meet the subjective element, the official must "know[] of and disregard[] an excessive

---

[5]     Although multiple sclerosis is indeed a serious medical condition, because Plaintiff has not produced evidence nor even alleged that he was denied treatment for a medical need that "was a condition of urgency, one that may produce death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005), the Court will not construe his clam as one involving an unconstitutional denial of medical care.

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837.  A plaintiff must show that a defendant acted with "more than mere negligence."  <u>Id</u>. at 835.

Although it is true that a "temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, simply does not rise to the level of an Eighth Amendment violation," <u>Whittead v. Lazerson</u>, No. 96 Civ. 2746 (AGS), 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998), on the record before the Court, Hart has presented sufficient evidence to raise disputed issues of fact as to this claim, thus precluding summary judgment.  While Officer Gonzalez testified that he took Hart to the bathroom at least three times during the period of six to seven hours he was present at the precinct, (Gonzalez Dep. at 61:11-63:4), Hart testified that he went to the bathroom when he arrived at the precinct but was not permitted to go again until ten hours later, at 8:00 p.m.[6]  (Hart Dep. 60:25.)  Because the Court is not to weigh the evidence or make credibility determinations at summary judgment, this conflicting testimony creates a disputed issue of fact that precludes summary judgment.  <u>See</u> <u>Anderson</u>, 477 U.S. at 253-54.

As to the subjective prong, the evidence in the record establishes that Officer Gonzalez was at least aware that Hart "suffered from something," although he could not recall what it was. (Gonzalez Dep. 63:9-12.)  Hart, meanwhile, testified that he specifically told Officer Gonzalez that he had multiple sclerosis and that this condition causes frequent urination.  (Hart Dep. 60:14-17, 64:17-65:1.)   He further testified that while he was confined, he made repeated

---

[6]     To the extent Hart's claim is based on the refusal by other officers both in the 40th precinct and in central booking to permit him to access the bathroom, (see Hart Dep. 60:22-61:11, 61:17:-62:1, 63:25-65:1), that claim is not before the Court.  To meet the two-prong test, a plaintiff must show that "each defendant" acted with deliberate indifference.  See Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003).  Hart does not name these other officers as defendants in this action.

requests to use the bathroom that were ignored.  (Id. 60:14-61:11.)  This testimony creates a question of fact as to whether Officer Gonzalez acted with a sufficiently culpable state of mind.

Although there are indeed numerous cases in which courts have found that a prisoner's temporary deprivation of the right to use the bathroom did not rise to the level of a constitutional violation, each of those cases involved denial of access to the bathroom for periods of time significantly shorter than the length of time at issue here.  See Walker v. Dep't of Correction, No. 11 Civ. 993 (KBF), 2012 WL 527210, at *1-2 (S.D.N.Y. Feb. 14, 2012) (80 minutes); Jones v. Marshall, No. 08 Civ. 0562 (RWS), 2010 WL 234990, at *3 (Jan. 19, 2010) (90 minutes); Gill v. Riddick, No. 03 Civ. 1456, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005) (70 minutes); Bourdon v. Roney, No. 99 Civ. 0769 (LEK)(GLS), 2003 WL 21058177, at *10-11 (N.D.N.Y. Mar. 6, 2003) (three hours); Whittead v. Lazerson, No. 96 Civ. 2746 (AGS), 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (approximately 90 minutes).[7]  By contrast, in DeBlasio v. Rock, No. 09 Civ. 1077 (TMJ/GHL), 2011 WL 4478515, at *16 (N.D.N.Y. Sept. 26, 2011), the court denied summary judgment on a conditions of confinement claim when a prisoner had alleged that he had been kept handcuffed in his cell for five hours while he pleaded to be un-handcuffed so that he could use the bathroom.  In so doing, the court concluded that "a reasonable juror, if he or she credited Plaintiff's version of events, could find . . . an extreme deprivation . . . [and] deliberate[] indifferen[ce]."  Id.; see also Kimbrough v. O'Neil, 523 F.2d 1057, 1058–59 (7th Cir. 1975) (reversing grant of motion to dismiss where prisoner alleged that he was denied access to the bathroom, among other things, for three days); Mahase v. City of New York, 96 CV 6105, 2000 WL 263742, at *2-4 (E.D.N.Y. Jan. 5, 2000) (denying motion to dismiss where prisoner alleged that during 30-hour detention period "she was initially denied access to toilet facilities

---

[7]      Odom v. Keane, 1997 WL 576088, at *4-5, cited by Defendants, is distinguishable as it involved access to a toilet that did not flush for 10 hours out of the day but was quickly repaired upon Plaintiff's initial complaint.

and later permitted to use a bathroom that was 'inhumanly filthy' and lacked toilet paper").

Furthermore, unlike in any of the foregoing cases, Plaintiff here testified that he specifically informed Officer Gonzalez that he had MS, which causes frequent urination, and that he was nonetheless denied his repeated requests to use the bathroom. Under these circumstances, a reasonable juror could find that Hart was denied a minimal civilized measure of life's necessities and that Officer Gonzalez had a sufficiently culpable state of mind amounting to deliberate indifference.

Accordingly, Defendants' motion for summary judgment on this claim is denied.

### 5.    Personal Involvement of Nikas

Defendants also move for summary judgment on the ground that Hart failed to establish the personal involvement of either Captain Nikas or Officer Gonzalez. Although Officer Gonzalez's involvement is addressed elsewhere in this Opinion, the Court agrees with Defendants' argument with respect to Captain Nikas and dismisses any claims against him on this ground.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). "To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation[s]." Ricks v. O'Hanlon, No. 07 Civ. 9849 (WHP), 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010) (citing Williams, 781 F.2d at 323). For supervisory defendants, personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a

17

policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  There is no evidence in the record to establish that Captain Nikas was personally involved in any of the alleged constitutional violations.  His relation to this action stems only from his prior knowledge of Hart's relationship with Johnson.  This fact, however, is immaterial to his involvement in the claims at issue in this action.  Accordingly, any claims against Captain Nikas are dismissed for lack of personal involvement.

### 6.  **Monell** Claim

In an Order dated November 20, 2012, the Court granted Hart's motion for leave to amend his complaint to assert a Monell claim against the City of New York.  Hart alleges "that the City of New York, through its police department, has in place a procedure that permits complaint reports to be taken, conduct to be characterized, and charges to be decided upon by civilians" and that this procedure is unconstitutional.  Because the Court has ruled that Hart's arrest and prosecution did not violate his constitutional rights, it does not reach Hart's Monell claim.  See Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").  Accordingly, Hart's Monell claim is dismissed.

## III.    Hart's Motion for Leave to Amend

Hart moves for leave to amend his complaint to assert a negligence claim against the City of New York based on the actions of Jegede Kehinde, a civilian employee of the NYPD who was responsible for assigning a code to Johnson's complaint.  Hart contends that an amendment at

this late stage of the litigation is necessary because Defendants failed to identify Kehinde as a person with knowledge of the claims in their initial disclosures and Hart only learned of Kehinde's involvement through additional discovery and deposition testimony.   Defendants oppose the request for leave to amend on the following grounds: (1) Hart has failed to comply with New York General Municipal Law, (2) Hart has failed to conform to Rule 16 of the Federal Rules of Civil Procedure, and (3) Defendants would be severely prejudiced if such an amendment were permitted.[8]

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6).  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).   "Where . . . a scheduling order governs amendments to the complaint, . . . the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  Holmes, 568 F.3d at 334-35.  Defendants urge the Court to apply Rule 16's good cause standard in light of the fact that discovery closed on June 29, 2012 pursuant to the Court's scheduling order, nearly eight months before this motion was filed.  The Court need not resolve this issue because even assuming the more liberal standard of Rule 15(a) applied, Hart's motion for leave to amend his complaint would be denied as futile.

As Defendants rightly note, Hart's motion must be dismissed for failure to comply with

---

[8]     This is Hart's second motion for leave to amend his complaint.  His first was filed in August 2012, after discovery was completed.  Although Hart knew of Kehinde's role in the underlying incident at the time of his first motion, he failed to request leave to add Kehinde as a defendant at that time.

New York's notice of claim requirement.  "Under New York law, a notice of claim is a condition precedent" to bringing certain tort actions against a municipality.  See Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999) (citing N.Y. Gen. Mun. Law § 50-e) (noting that "in a federal court, state notice-of-claim statutes apply to state law claims") (emphasis from original removed); McClendon v. Cnty. of Nassau, No. 11 Civ. 0190 (SJF)(ETB), 2012 WL 4849144, at *10 (E.D.N.Y. Oct. 11, 2012).  Pursuant to New York General Municipal Law § 50-e, the notice of claim must set forth the nature of the claim and must be filed within ninety days of when the claim arises, and the plaintiff must commence the action within a year and ninety days from the date on which the cause of action accrues.  "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  Hardy, 164 F.3d at 793.  The notice of claim requirement is strictly construed by New York state courts, and failure to comply with this requirement "requires a dismissal for failure to state a cause of action."  Id. at 793-94.

In his proposed amended complaint, Hart fails to plead that he satisfied the notice of claim requirements of § 50-e.  In apparent recognition of this deficiency, Hart argues that the Court should equitably toll the notice of claim requirement because his failure to serve it in a timely manner was due to Defendants' failure to identify Kehinde at an earlier stage of discovery.  This Court does not have jurisdiction to grant Hart leave to serve a late notice of claim.  Although "[t]he Second Circuit has not definitively ruled on whether a federal district court may grant a request to extend time to serve the notice of claim," district courts in this Circuit "have routinely found that they lack jurisdiction to even consider such an application."

20

Barry v. Vill. of Millbrook, 815 F. Supp. 2d 711, 725 (S.D.N.Y. 2011) (quoting  Humphrey v.

Cnty. of Nassau, No. 06 Civ. 3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009)

(collecting cases).  Because Hart has failed to satisfy the requirements of § 50-e and this Court

lacks jurisdiction to grant him an extension of time to file his notice of claim, his motion to

amend must be dismissed as futile.  See Best v. Town of Clarkstown, 61 F. App'x 760, 763 (2d

Cir. 2003) (affirming denial of a motion to amend where plaintiff did not satisfy the notice of

claim requirement); Rose v. Cnty. of Nassau, 904 F. Supp. 2d 244, 247-48 (E.D.N.Y. 2012)

(dismissing negligence claim brought against Nassau County because of plaintiff's failure to

comply with the notice of claim requirement).

 Hart's proposed amendment is also futile because he has failed to allege—nor could he

allege—the necessary elements of a negligence claim against the City of New York.  As the New

York Court of Appeals has held on several occasions, "[g]overnment action, if discretionary,

may not be a basis for liability, while ministerial actions may be, but only if they violate a special

duty owed to the plaintiff, apart from any duty to the public in general."  Valdez v. City of N.Y.,

18 N.Y.3d 69, 76-77 (2011).  The Court of Appeals has "expressly rejected the contention 'that a

ministerial breach by a governmental employee necessarily gives rise to municipal liability.'"

Id. at 77 (quoting Lauer v. City of N.Y., 95 N.Y.2d 95, 99 (2000)).  Rather, a plaintiff must

"establish that the municipality owed a duty of care by demonstrating the existence of a special

duty beyond the obligation owed the public at large."  Id.  To establish a special relationship, a

plaintiff must show that there was:

> (1) an assumption by the municipality, through promises or actions, of an
> affirmative duty to act on behalf of the party who was injured; (2) knowledge on
> the part of the municipality's agents that inaction could lead to harm; (3) some
> form of direct contact between the municipality's agents and the injured party;
> and (4) that party's justifiable reliance on the municipality's affirmative
> undertaking.

Id. at 80 (quoting Cuffy v. City of N.Y., 69 N.Y.2d 255, 260 (1987)).  The fourth element—the "justifiable reliance" requirement—is "critical."  Id. at 81.

Assuming *arguendo* that Kehinde's action in assigning a code to Johnson's complaint was ministerial, Hart nonetheless fails to state a negligence claim.  In his proposed amended complaint, Hart fails to allege any facts which could support a finding of a special relationship between himself and the police department and/or Kehinde, as agents of the City of New York. Hart has not alleged any facts demonstrating that the City of New York made any promises or representations to act on his behalf, nor has he alleged any direct contact between himself and Kehinde or any justifiable reliance on his part.  Indeed, the actions giving rise to the negligence claim—Kehinde's assignment of the aggravated harassment code to the complaint—occurred in response to Johnson's contact with the NYPD, not Hart's.  At best, Hart might allege that the NYPD owes a duty to the public generally, but that is insufficient to sustain a negligence claim against a municipality.  See Lauer, 95 N.Y. at 100-01.   Accordingly, because Hart cannot state a cause of action for negligence, his proposed amendment is futile and must be denied.  See Lamothe v. Town of Oyster Bay, No. 08 Civ. 2078 (ADS)(AKT), 2011 WL 4974804, at *11 (E.D.N.Y. Oct. 19, 2011) (denying motion to amend to assert a negligence claim because plaintiffs "failed to allege any facts upon which [the court] may premise the finding of a special relationship giving rise to a special duty"); De Asis v. N.Y.C. Police Dep't, No. 07 Civ. 3904 (DLI)(LB), 2008 WL 3876075, at *4 (E.D.N.Y. Aug. 18, 2008) (dismissing negligence claim with prejudice for failure to establish that defendants owed plaintiff a duty).

## IV.    Hart's Motion for Equitable Relief

Finally, Hart asserts that he is entitled to equitable relief pursuant to Federal Rule of Civil Procedure 37(b) due to Defendants' failure to disclose all relevant parties in their interrogatory

responses.  Hart requests that the Court "deem [Defendants' interrogatory response] an abuse of discovery sufficient to warrant direct recovery against Officer Gonzalez and/or the City of New York for acts attributed to Sergeant[s] Seth Lynch and 'John' Smalls, who allegedly approved the charge against Mr. Hart."  (Pl. Opp'n 6.)  The Court declines to grant this relief.

Rule 37(c) authorizes courts to impose sanctions listed under Rule 37(b)(2)(A) "if a party fails to provide information or identify its witness as required by Rule 26(a) or (e), unless the failure to do so was "substantially justified or is harmless."  "[D]istrict courts possess wide discretion in imposing sanctions under Rule 37."  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007).  Factors that courts may consider in evaluating whether to impose sanctions include: "(1) the willfulness of the non-compliant party or the reason for noncompliance;  (2) the efficacy of lesser sanctions;  (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009). "[T]he entry of a default 'is a harsh remedy to be used only in extreme situations.'"  S.E.C. v. Euro Sec. Fund, No. 98 Civ. 7347 (DLC), 2009 WL 2709316, at *4 (S.D.N.Y. Aug. 27, 2009) (quoting Agiwal, 555 F.3d at 302).

In its November 20, 2012 Order denying Hart's first motion to amend, the Court touched upon the arguments raised by Hart in support of his present request for sanctions.  In denying Hart's request for equitable tolling of the statute of limitations, the Court rejected Hart's argument that Defendants' response to his interrogatory requesting information for the "individual who made the decision to arrest" was misleading.  The Court stated, "Although perhaps too narrow a response, the interrogatory was arguably ambiguous and there is nothing in the record to suggest that Defendants' response was an intentional effort to obstruct [Hart's]

investigation." That conclusion remains true at this later stage of the litigation. Moreover, as noted in the November 20th Order, Hart had access to his criminal case file—which included the names of Sergeants Brown, Lynch and Smalls as officers involved his arrest—prior to his filing of the complaint, and Defendants produced this file in the course of discovery. Thus, to the extent Defendants should have disclosed the names of other officers in their interrogatory responses, this error was harmless. The Court thus declines to impose sanctions in this matter.

## V.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part and Hart's motion for leave to amend the complaint and for equitable relief is denied. Hart's claims for false arrest, false imprisonment and malicious prosecution under § 1983 and state law are dismissed. Hart's Monell claim is also dismissed. Only Hart's Eighth Amendment claim shall proceed to trial.

SO ORDERED.

Dated:        November 18, 2013
                   New York, New York

Ronnie Abrams
United States District Judge

24